UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDAL DE HOOG,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No.  2:13-cv-0235-KJN<br><br><br>ORDER |

　　　　Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from December 22, 2008, through the date of the ALJ's decision.  (ECF No. 15.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 20.)  No optional reply brief was filed.

　　　　For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 7, 10.)

Commissioner.

I.      BACKGROUND

Plaintiff was born on December 22, 1959, obtained a high school diploma and completed a four-year carpentry apprenticeship, is able to communicate in English, and previously worked primarily as a carpenter, superintendent, and in construction sales.[2] (Administrative Transcript ("AT") 19, 44-46, 57-58, 156.) Plaintiff initially sustained a back injury for which he underwent spinal fusion surgery in 1993. (AT 31-32, 508.) He then resumed work for numerous years despite allegedly worsening back symptoms until he suffered a left foot fracture on December 22, 2008, after which he did not return to work. (AT 31-32, 509.)

On July 6, 2010, plaintiff applied for DIB, alleging that he was unable to work as of December 22, 2008, due to back problems, left elbow bursitis, knee problems, foot problems, arthritis, gout, hypertension, psoriasis, and past skin cancer. (AT 11, 155.) Around February 2, 2011, the Commissioner determined that plaintiff was not disabled. (AT 57, 75-77.) Upon plaintiff's request for reconsideration, the determination was affirmed on June 3, 2011. (AT 58, 82-87.) Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which ultimately took place on December 22, 2011, and at which plaintiff (represented by an attorney) and a vocational expert ("VE") testified. (AT 11, 27-56.)

In a decision dated December 28, 2011, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from December 22, 2008, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 11-21.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 17, 2012. (AT 1-6.) Thereafter, plaintiff filed this action in federal district court on February 7, 2013, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

II.     ISSUES PRESENTED

Plaintiff has raised the following issues: (1) whether the ALJ erred in not finding a severe mental impairment; (2) whether the ALJ erroneously discounted the opinion of plaintiff's consultative examiner, Dr. Frank Fine, and failed to adopt his proposed functional capacity assessment; (3) whether the ALJ erred in not seeking an additional opinion by a medical advisor; and (4) whether the ALJ improperly failed to credit plaintiff's testimony concerning his symptoms and functional limitations.

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

   A.     Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff met the insured

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-

status requirements of the Act for purposes of DIB through March 31, 2014.  (AT 13.)  At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since December 22, 2008, plaintiff's alleged disability onset date.  (Id.)  At step two, the ALJ determined that plaintiff had the following severe impairments:  lumbar back pain, olecranon bursitis, and foot pain.  (Id.)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 16.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), except he may only lift or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk, each, 6 hours in an 8-hour work-day, with a sit/stand option; should rarely climb ramps, slopes, ladders, ropes or scaffolds; with no repetitive bending or twisting of the lumbar spine and no repetitive pushing/pulling greater than 15 pounds with the left upper extremity.  He is limited to simple,

---

42 (1987).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

>routine, repetitive tasks and only simple work-related decisions,
>with few workplace changes.

(AT 16.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 19.)  Finally, at step five, the ALJ determined, in reliance on the VE's testimony, that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  (AT 20.)  Specifically, the VE testified that plaintiff would be able to perform the following representative unskilled occupations: (1) parking attendant (with 12,000 positions in California); (2) information clerk (with 10,000 positions in California); and (3) office helper (with 37,000 positions in California). (AT 20, 49-51.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from December 22, 2008, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 20.)

   B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

     1. Whether the ALJ erred in not finding a severe mental impairment

Plaintiff contends that the ALJ erred in not finding plaintiff's "psyche impairment" to be severe at step two.  That argument lacks merit.

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 404.1521(a).  As the Ninth Circuit Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose of groundless claims.  An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

However, in this case, plaintiff failed to show that he had a medically determinable mental impairment in the first instance.  No acceptable medical source has opined that plaintiff has a

1 mental impairment. See 20 C.F.R. § 404.1513(a) ("We need evidence from acceptable medical
2 sources to establish whether you have a medically determinable impairment(s)."). Plaintiff points
3 to a single statement in consultative examiner Dr. Frank Fine's December 2, 2011 report,
4 indicating that plaintiff was incapable of even low stress jobs based on his multiple medical
5 problems. (AT 527.) But that statement contains no diagnosis of a mental impairment, and the
6 stress limitation imposed instead appears to be derived from plaintiff's physical impairments.
7 That conclusion is reinforced by Dr. Fine's express opinion that emotional factors did *not*
8 contribute to the severity of plaintiff's symptoms and functional limitations. (Id.) Dr. Fine also
9 declined to find that depression or some other psychological condition was present and affected
10 plaintiff's physical condition. (Id.)

11 Plaintiff further references his testimony at the hearing that he still experienced depressive
12 symptoms attributable to the death of his 18-year old son four years prior, and for which he had
13 missed approximately one month of work at the time. (AT 31, 40-41.) Although the court is
14 sympathetic to plaintiff's experience of such a tragic event, a claimant's report of symptoms
15 standing alone is insufficient to establish the existence of a medically determinable impairment.
16 See 20 C.F.R. § 404.1528(a).

17 Moreover, the court notes that the ALJ actually limited plaintiff to "simple, routine,
18 repetitive tasks and only simple work-related decisions, with few workplace changes." (AT 16.)
19 Plaintiff has not pointed to any record evidence of concrete functional limitations attributable to a
20 mental impairment, and entirely fails to explain why the mental limitations incorporated into the
21 ALJ's RFC do not adequately account for any residual depressive symptoms.

22 In light of the above, the court finds no error in the ALJ's treatment of any alleged mental
23 impairment.

24     2. <u>Whether the ALJ erroneously discounted the opinion of plaintiff's
25 consultative examiner, Dr. Frank Fine, and failed to adopt his proposed functional capacity
26 assessment</u>

27 The weight given to medical opinions depends in part on whether they are proffered by
28 treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195,

1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Dr. Fine interviewed and examined plaintiff on December 2, 2011, at plaintiff's counsel's request, and reviewed plaintiff's prior medical records. (AT 522-29.) In a functional capacity questionnaire, Dr. Fine stated that plaintiff could rarely lift up to 10 lbs; could walk half a block without rest or severe pain; could sit 15 minutes at one time before needing to get up; could stand 15 minutes at one time before needing to sit down, walk around, etc.; had to walk every 20

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

1  minutes for about 10 minutes; could sit and stand/walk less than 2 hours total in an 8-hour
2  working day; had to use a cane or other assistive device; needed to shift positions at will from
3  sitting, standing, or walking; could occasionally look down, turn his head right or left, look up,
4  and hold his head in a static position; could occasionally twist, stoop/bend, crouch/squat, climb
5  ladders, and climb stairs; and needed to take unscheduled breaks every 15 minutes for
6  approximately 30 minutes. (AT 527-29.) Dr. Fine further opined that plaintiff would constantly
7  experience pain and other symptoms severe enough to interfere with attention and concentration
8  needed to perform even simple work tasks; was incapable of even low stress jobs; and would be
9  absent from work more than four days per month as a result of his impairments. (AT 527, 529.)

10  The ALJ provided several specific and legitimate reasons for discounting Dr. Fine's
11  severe and extreme opinion. The ALJ correctly noted that the opinion contained several internal
12  inconsistencies. (AT 19.) For example, although Dr. Fine stated in his narrative report that
13  plaintiff could not stand more than 30 minutes at a time, he indicated in his functional capacity
14  questionnaire that plaintiff could stand no more than 15 minutes at a time. (AT 525, 527.) Also,
15  according to the narrative report, plaintiff could not climb stairs or ladders, but in the
16  questionnaire, Dr. Fine stated that plaintiff could occasionally climb stairs and ladders. (AT 525,
17  529.) Furthermore, although Dr. Fine opined that plaintiff could stand/walk less than 2 hours
18  total in an 8-hour working day, he inconsistently mandated that plaintiff must walk every 20
19  minutes for a period of 10 minutes. (AT 528.) If the latter restriction were given effect, plaintiff
20  would walk for about 20 minutes every hour, i.e., about 2 hours and 40 minutes in an 8-hour day,
21  which exceeds the 2 hours total restriction and which does not even account for any time spent
22  standing. These inconsistencies are a proper reason to discount Dr. Fine's opinion. Matney v.
23  Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) ("Insofar as the ALJ rejected the opinions
24  expressed by Dr. Lafrance, the inconsistencies and ambiguities noted by the ALJ represent
25  specific and legitimate reasons for doing so.").

26  The ALJ also reasonably found that Dr. Fine's severe opinion was inconsistent with
27  medical evidence from plaintiff's treating providers. (AT 19.) The ALJ cited to December 23,
28  2010 x-rays of plaintiff's lumbar spine, which showed only mild degenerative changes and no

acute abnormality. (AT 14, 502.) The ALJ also pointed to a March 2009 note by plaintiff's treating podiatrist, which indicated that x-rays showed plaintiff's left foot fracture had essentially healed; and a subsequent December 2009 treatment note releasing plaintiff to return to work after finding that plaintiff's gout symptoms were well controlled, with plaintiff only reporting slight residual discomfort. (AT 15, 288-89, 322.) With respect to plaintiff's elbow, the ALJ observed that plaintiff underwent surgery on August 12, 2010, and on September 22, 2010, plaintiff's orthopedic surgeon noted that plaintiff was getting better daily with the expectation that he would be completely cleared in about six weeks. (AT 14, 409-11, 416.) On October 1, 2010, although plaintiff reported difficulty sleeping from leg and low back pain, he told his treating physician that his elbow was doing well, with "less and less pain" and "better function." (AT 15, 475-76.)

        The ALJ further justifiably concluded that Dr. Fine's evaluation was inconsistent with the findings and assessments of other examining physicians. (AT 19.) For example, although Dr. Fine found that plaintiff could only forward flex about 20 degrees and extend to about 0 degrees with his lumbar spine (AT 524), Dr. Jeffrey Scott, who examined plaintiff just six weeks prior on October 20, 2011 for purposes of his worker's compensation case, found that plaintiff could forward flex 60 degrees and extend to 30 degrees. (AT 511.) Furthermore, whereas Dr. Fine apparently found muscle spasms in plaintiff's back, a positive straight leg raise test at 80 degrees, sensory deficits, and limited range of motion of the left elbow (AT 524), Dr. Scott found minimal tenderness to palpation in the lumbar paraspinal region, detected no muscle spasms in plaintiff's back, modified and straight leg raise tests were negative, plaintiff was able to heel and toe walk with full strength and full range of motion in both lower extremities, no sensory deficits were present, and plaintiff's left arm and elbow had full strength and normal range of motion, with some tenderness noted. (AT 511-12.) Dr. Scott opined that plaintiff was unable to return to heavy carpentry/construction work, limited to lifting no more than 25 pounds on an occasional basis, and had several postural limitations, including preclusion of repetitive bending and twisting of the lumbar spine. (AT 520.)[5]

---

[5] Plaintiff argues that the ALJ erred in not adopting Dr. Scott's additional limitation that plaintiff "be precluded from prolonged sitting, standing and walking for more than 30 minutes without a

Dr. Fine's clinical findings are also inconsistent with those of Dr. Fariba Vesali, who examined plaintiff on December 29, 2010, and reviewed plaintiff's records. (AT 444.) Dr. Vesali found that plaintiff had no difficulty getting on and off the exam table, or taking off his shoes and putting them back on; had a normal gait; could heel and toe walk with no difficulties; and did not use an assistive device. (AT 445.) Although Dr. Vesali noted some tenderness and pain in plaintiff's lumbar spine and left foot, straight leg raising tests were negative; plaintiff had normal muscle bulk, tone, and strength in all four extremities; plaintiff had no tenderness or inflammation in the bilateral upper extremities; and sensory and reflex tests were normal. (AT 445-46.) These underlying clinical findings were largely consistent with those of Dr. Scott in October 2011. To be sure, Dr. Vesali ultimately concluded that plaintiff had no limitations (AT 447), and the ALJ rejected that functional assessment by concluding, based on the evidence in the record as a whole, that plaintiff was significantly more limited than Dr. Vesali found. (AT 17-19.) Nevertheless, the ALJ was entitled to rely on Dr. Vesali's underlying clinical findings to discount Dr. Fine's severe assessment and formulate plaintiff's RFC.

The ALJ also permissibly relied on the opinions of the non-examining state agency physicians to discount Dr. Fine's opinion. (AT 19.) "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). On February 2, 2011, Dr. John Pataki reviewed plaintiff's records and opined that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand/walk at least 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and

---

15 minute break," despite ostensibly giving Dr. Scott's opinion significant weight. (AT 18, 520.) However, the ALJ incorporated a sit/stand option into the RFC, which substantially accounts for concerns related to prolonged sitting, standing, and walking. With respect to the 15-minute break limitation, the ALJ justifiably gave that particular limitation little weight, because it was conclusory and minimally supported – Dr. Scott articulated no reasoning for how that specific limitation was supported by his clinical findings. See Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (noting that the ALJ is required to consider a physician's opinion along with other conflicting evidence, and need not necessarily agree with everything the physician says to find that the physician's opinion contains substantial evidence).

occasionally climb, balance, stoop, kneel, crouch, and crawl. (AT 448-55.) Subsequently, on June 2, 2011, Dr. R. Fast reviewed plaintiff's records and opined that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand/walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. (AT 484-89.) Both state agency physicians provided a narrative summary and evaluation of the evidence to support their assessments, which are generally consistent with the objective medical evidence and the clinical findings of Drs. Scott and Vesali, as discussed above.

Therefore, the court concludes that the ALJ provided several specific and legitimate reasons for discounting Dr. Fine's opinion as to plaintiff's functional limitations.[6] Furthermore, the court finds that substantial evidence in the record as a whole supports the ALJ's RFC assessment. Even if another judge could have interpreted the evidence differently, the court defers, as it must, to the ALJ's reasonable and rational resolution of any inconsistencies and ambiguities.

3. <u>Whether the ALJ erred in not seeking an additional opinion by a medical advisor</u>

Plaintiff's argument that the ALJ was required to seek an additional opinion by a medical advisor is unpersuasive. The ALJ was not required to seek an updated opinion by a medical advisor regarding plaintiff's alleged mental impairment, because, as discussed above, the record here contains no evidence from an acceptable medical source that plaintiff suffered from a mental impairment. Even Dr. Fine, plaintiff's own retained consultative examiner, indicated that emotional factors did not contribute to the severity of plaintiff's symptoms and functional limitations. (AT 527.)

An updated opinion by a medical advisor was also not required merely because additional medical evidence was received after the state agency physicians had already reviewed plaintiff's records. In virtually every case further evidence is received after the state agency physicians

---

[6] The ALJ also noted that Dr. Fine "appeared to be more of an advocate than an objective examiner and, apparently, heavily based his opinion upon Claimant's subjective complaints, without sufficient objective supporting information." (AT 19.) However, the court need not address the parties' disputes concerning this proffered reason for discounting Dr. Fine's opinion, because the other reasons discussed above are independently sufficient to support the ALJ's decision.

11

render their assessments –sometimes additional evidence and records are even received after the ALJ hearing. For that very reason, the ALJ is tasked with considering the evidence in the record as a whole. Under plaintiff's interpretation, the Commissioner would essentially be required to seek updated opinions in all such cases. The court declines to impose such a novel and onerous requirement. Even if an updated opinion may be required in some cases, such as where the subsequent evidence shows a material change in the claimant's condition not considered by the previous evaluators, such circumstances are not present in this case. Here, the ALJ considered all the record evidence, including the more recent evidence provided by plaintiff; weighed the evidence consistent with applicable legal standards; and rendered findings that were supported by substantial evidence in the record as a whole.

Plaintiff's reliance on SSR 96-6p is also misplaced. That ruling states that an updated medical opinion from a medical expert is required "[w]hen additional medical evidence is received that in the opinion of the [ALJ] may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, at **3-4. However, neither Dr. Fine nor any of the other providers from whom additional evidence was received opined that plaintiff's impairments met or equaled a listing, let alone explained how the medical evidence supported such a finding. Indeed, plaintiff also offers no such specific argument on appeal. As discussed above, the ALJ permissibly discounted Dr. Fine's opinion and appropriately weighed the record evidence.

For these reasons, additional or updated medical opinions were not required.

4. <u>Whether the ALJ improperly failed to credit plaintiff's testimony concerning his symptoms and functional limitations</u>

In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of

12

> the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's subjective allegations. Indeed, there is no question that plaintiff suffers from back pain and other symptoms, and the ALJ found plaintiff partially credible and imposed significant functional limitations resulting in a reduced range of light work. (AT 16-17, 19.) However, the ALJ discounted plaintiff's testimony concerning the degree of his symptoms and functional limitations, and, even though the ALJ's reasons for doing so can be extrapolated to some degree from his discussion of the record evidence, the court agrees with plaintiff that the ALJ did not clearly and properly articulate his analysis concerning plaintiff's credibility.

1       Nevertheless, social security cases are subject to harmless error analysis. Curry v.
2   Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990). Therefore, the court will not remand a case simply
3   for the ALJ to write a better decision where the record, as in this case, clearly reveals numerous
4   sufficient grounds for discounting plaintiff's testimony, rendering remand futile.
5       The ALJ found that the weight of the medical evidence did not support plaintiff's claims
6   of limitations to the disabling degree alleged. (AT 19.) For the reasons discussed above, that
7   finding is supported by substantial evidence. To be sure, "after a claimant produces objective
8   medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective
9   complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of
10  the symptoms. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan,
11  947 F.2d 341, 345 (9th Cir. 1991)). But even though lack of medical evidence cannot form the
12  sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant
13  factor for the ALJ to consider. Burch, 400 F.3d at 681.
14      Additionally, as the Commissioner points out, there were several inconsistencies in
15  plaintiff's testimony and other statements. For example, although plaintiff alleged disability since
16  December 22, 2008, he testified that he had sought to return to work in December 2009, but that
17  his former employer "didn't have no work" and was slow. (AT 43-45.) Plaintiff further indicated
18  that he had applied for unemployment benefits around that time. (AT 44.) See Copeland v.
19  Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (recognizing that an ALJ may properly discount
20  credibility of a claimant who collected unemployment benefits and thus held himself out as
21  available for work). Also, even though plaintiff testified at the hearing to suffering from
22  depressive and other emotional symptoms related to the death of his son four years earlier (AT
23  31, 40-41), he repeatedly denied having mental or emotional conditions at various points during
24  the administrative evaluation of his claim. (AT 155, 158, 191-94, 201-04, 214-16.)
25      Finally, plaintiff's regular activities are also inconsistent with his allegations of disabling
26  symptoms and limitations. "While a claimant need not vegetate in a dark room in order to be
27  eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports
28  participation in everyday activities indicating capacities that are transferable to a work setting ...

1 Even where those activities suggest some difficulty functioning, they may be grounds for
2 discrediting the claimant's testimony to the extent that they contradict claims of a totally
3 debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted);
4 see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered
5 claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and
6 boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan
7 v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding
8 claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his
9 friend's child" was a specific finding sufficient to discredit the claimant's credibility).

10 Here, the ALJ specifically referenced a July 7, 2010 treatment record indicating that
11 plaintiff had injured his left elbow/arm after trap shooting. (AT 15, 276.) On September 21,
12 2010, plaintiff mentioned mowing and working in the yard until his back hurts; running errands;
13 taking the dog for a run; visiting family/friends; and doing cleaning, laundry, and household
14 repairs. (AT 183, 185.) Thereafter, on December 29, 2010, plaintiff told Dr. Vesali that he lived
15 by himself, drove a car, did grocery shopping, cooked, did the dishes, did laundry, and performed
16 other chores. (AT 444.) Subsequently, on October 20, 2011, plaintiff informed Dr. Scott that he
17 rode his bike "when his back lets him," that he fished for a hobby, and that he was able to
18 perform regular household chores (although they apparently took longer to perform). (AT 511.)
19 Thus, although the record undoubtedly reflects that plaintiff's activities are limited by his
20 impairments, the activities are inconsistent with an alleged inability to do a reduced range of light
21 work, including a sit-stand option, as found by the ALJ.

V. CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

    1. Plaintiff's motion for summary judgment (ECF No. 15) is denied.

    2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is granted.

    3. Judgment is entered for the Commissioner.

1    4. The Clerk of Court shall close this case.

2    IT IS SO ORDERED.

3  Dated:  July 22, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE